## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| PEGGY RODRIGUEZ, ERIKA ZEIDLER and MELISSA JIMENEZ on behalf of themselves and all others similarly situated,<br><br>                  Plaintiffs,<br><br>   v.<br><br>ITO EN (NORTH AMERICA) INC.<br><br>                  Defendant. | Case No.  1:21-cv-00894<br><br>**CLASS ACTION COMPLAINT**<br><br>**Demand for Jury Trial** |

Plaintiffs Peggy Rodriguez, Erika Zeidler, and Melissa Jimenez ("Plaintiffs"), acting on behalf of themselves and all other similarly situated persons, bring this action against Ito En (North America) Inc. ("Defendant" or "Ito En") and on basis of personal knowledge, information and belief, and investigation of counsel, allege as follows:

### INTRODUCTION

1.      Defendant, through Teas' Tea, and specifically the Teas' Tea's Organic "Slightly Sweet"  product line ("Teas' Tea" or "Product") manufacturers, distributes, markets, labels and sells its iced tea beverages purporting to be "Slightly Sweet" and low in sugar.

2.      During the class period (as defined below), consumers purchased the Product throughout the United States including Plaintiffs in their home states as described below.

3.      During the class period (as defined below) Defendant falsely and misleadingly advertised and marketed its Product to consumers, labeling it as "Slightly Sweet."

4.      Defendant's "Slightly Sweet" representation it specifically makes on the Product label is understood by consumers that such a Product is in fact low in sugar.

5.      Contrary to this representation, Defendant's Product is anything but "Slightly Sweet" and low in sugar.  Instead, Defendant's Product is high in sugar which directly contradicts the sugar representation Defendant prominently makes on its label.

6.       The reason Defendant uses such a prominent "Slightly Sweet" representation on the front of its label is so that consumers, including the Plaintiffs, would read and rely on such a representation and induce Plaintiffs to purchase the Product at a premium price.

7.      Defendant charges a premium for this falsely and deceptively labeled "Slightly Sweet" Product.

8.      Plaintiffs would not have purchased or paid more for the Product had they known or were aware that the Product was not "Slightly Sweet" or low in sugar.

9.      As a result of Defendant's misrepresentations and omissions, Plaintiffs and other putative Class members were harmed by purchasing the advertised Product which they would not have purchased had they known that the Product was not "Slightly Sweet" or paying  a premium price for the Product advertised to be low in sugar while they only received an inferior Product that in no way conformed to the "Slightly Sweet" representation on Defendant's label.

## **BACKGROUND OF THE CASE**

10.      Obesity rates in America have skyrocketed. "In 1962, 46 percent of adults in the U.S. were considered overweight or obese. By 2010, that figure had jumped to 75 percent."[1]

11.      One significant contributing factor for such a large rise in American obesity rates is sugar consumption.[2]

---

[1] *See* https://www.hopkinsmedicine.org/health/wellness-and-prevention/obesity-sugar-and-heart-health (last visited July 17, 2020).

[2] *Id.*

12.    The perils of high sugar consumption, especially from added sugar are well documented.

13.    "In a study published in 2014 in JAMA Internal Medicine, . . . an association [was found] between a high-sugar diet and a greater risk of dying from heart disease. [For example] [o]ver the course of the 15-year study, people who got 17% to 21% of their calories from added sugar had a 38% higher risk of dying from cardiovascular disease compared with those who consumed 8% of their calories as added sugar."[3]

14.    In fact, "[s]everal studies have found a direct link between excess sugar consumption and obesity and cardiovascular problems worldwide." *See Sweet Stuff: How Sugars and Sweeteners Affect Your Health*, NIH (Oct. 2014).

15.    Our country's own CDC agrees: "Americans are eating and drinking too much added sugars which can lead to health problems such as weight gain and obesity, type 2 diabetes, and heart disease."[4]

16.    Sugar found in beverages is especially problematic for consumers trying to lose weight because calories consumed through a beverage do not have the same appetite suppression effects as eating solid whole food.[5]

---

[3] *See* https://www.health.harvard.edu/heart-health/the-sweet-danger-of-sugar (last visited July 16, 2020).

[4] *See* https://www.cdc.gov/nutrition/data-statistics/know-your-limit-for-added-sugars.html (last visited Oct. 2, 2020); *see also* https://www.washingtonpost.com/national/health-science/eating-too-much-sugar-can-hurt-your-health-and-for-some-its-actually-addictive/2017/12/15/3853d3e8-de8b-11e7-bbd0-9dfb2e37492a_story.html ("[e]ating too much sugar contributes to numerous health problems, including weight gain, Type 2 diabetes, dental caries, metabolic syndrome and heart disease, and even indirectly to cancer because of certain cancers' relationship to obesity.") (last visited Oct. 2, 2020).

[5] *See* https://www.health.harvard.edu/heart-health/the-sweet-danger-of-sugar (last visited July 16, 2020).

17.    As a result, the dangers of high sugar consumption and its impacts on diabetes and obesity are well known, which is why consumer preferences in the United States have changed.[6]

18.    When consumers purchase beverages, a material factor they consider is the sugar content.

19.    Consumers, including Plaintiffs and Class Members, expect that the amount of sugar advertised on the front of the label does not severely contradict the ingredients actually contained in the product itself. This is especially the case when the consumer pays a premium for an organic product that is supposedly slightly or lightly sweetened.

20.    However, Defendant's Product misled consumers by using labeling and representations to deceive the consumer into believing that the beverage is only "slightly sweet" meanwhile the Product contains 20 grams of added sugar.[7]

21.    20 grams of added sugar is a significant and excessive amount.

22.    For example, 20 grams of added sugar equates to a consumer adding approximately five teaspoons of sugar to their beverage.[8]

23.    Meanwhile, the American Heart Association recommends that men consume 37.5 and women consume 25 grams of added sugar per day respectively.[9]

_____

[6] *Id.*

[7] The product is available in a variety of flavors. However, all make the same "slightly sweet" representation and all contain the same amount of added sugar: 20 grams. *See* https://teastea.com/products/slightly-sweet (last visited Feb. 17, 2021).

[8] *See* https://www.inchcalculator.com/convert/teaspoon-sugar-to-gram-sugar/ (last visited Jan. 27, 2021) (this conversation tool provides that 4.75 teaspoons of granulated sugar equate to approximately 20 grams of sugar).

[9] *See* https://www.healthline.com/nutrition/how-much-sugar-per-day#section3 (last visited July 17, 2020).

24.     In other words, Defendant misled consumers into believing they were consuming a beverage low in sugar while, in truth, they were consuming almost the entirety of the recommended added sugar per day in a single drink.

## **PARTIES**

25.     Plaintiff Melissa Jimenez is a citizen of New York residing in Bayside. She purchased the Product on numerous occasions for personal, family or household use.

26.     Plaintiff Peggy Rodriguez is a citizen of Indiana residing in Greenwood. She purchased the Product on numerous occasions for personal, family or household use.

27.     Plaintiff Erika Zeidler is a citizen of Virginia residing in Springfield. She purchased the Product on numerous occasions for personal, family or household use.

28.     Defendant Ito En (North America) Inc.  is a corporation registered to do business and headquartered in Brooklyn, New York.

## **JURISDICTION AND VENUE**

29.     This Court has jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  There are at least 100 members in the proposed class, the aggregated claims of the individual class members exceed the sum or value of $5,000,000.00 exclusive of interest and costs, and some of the members of the proposed class are citizens of states different from the Defendant.

30.     This Court may exercise jurisdiction over Defendant because its headquarters are located in New York and it is registered to conduct business in New York.

31.     Defendant has sufficient minimum contacts in New York. Defendant intentionally avails itself of the markets within New York through the promotion, sale, marketing, and distribution of Teas' Tea, which renders this Court's exercise of jurisdiction necessary and proper.

32.     Venue is proper in this District under 28 U.S.C. § 1391 because Defendant is headquartered here and conducts substantial business in this District.

## FACTUAL ALLEGATIONS

**Plaintiffs' Facts**

33.     Melissa Jimenez purchased the Product many times over the last four years at various retailers in New York, including Whole Foods, Target, and Costco. Prior to each purchase, she specifically viewed and relied on the phrase "Slightly Sweet" on the beverage's labeling reasonably believing that the Product was, in fact, low in sugar. Ms. Jimenez would not have purchased or paid more for the Product had she known or was aware that the Product was not low in sugar and "Slightly Sweet", but rather, had much more sugar in it than prominently represented and advertised on the front of the Product's label. Ms. Jimenez would purchase the Product again in the future if the Product was remedied or reformulated to be in accordance with Defendant's representation on the label.

34.     Peggy Rodriguez purchased the Product many times over the last four years at Walmart and Kroger in Indiana. Prior to each purchase, she specifically viewed and reasonably relied on the phrase "Slightly Sweet" on the beverage's labeling believing that the Product was, in fact, low in sugar and "Slightly Sweet." Ms. Rodriguez would not have purchased or paid more for the Product had she known or was aware that the Product was not low in sugar and "Slightly Sweet", but rather, had much more sugar in it than  prominently represented and advertised on the front of the Product's label. Ms. Rodriguez would purchase the Product again in the future if the Product was remedied or reformulated to be in accordance with Defendant's representation on the label.

35.    Erika Zeidler purchased the Product many times over the last four years at Target in Virginia. Prior to each purchase, she specifically viewed and reasonably relied on the phrase "Slightly Sweet" on the beverage's labeling  believing that the Product was, in fact, low in sugar and "Slightly Sweet." Ms. Zeidler would not have purchased or paid more for the Product had she known or was aware that the Product was not low in sugar and "Slightly  Sweet", but rather, had much more sugar in it than prominently represented and advertised on the front of the Product's label. Ms. Zeidler would purchase the Product again in the future if the Product was remedied or reformulated to be in accordance with Defendant's representation on the label.

## **Defendant's "Slight Sweet" representation is deceptive and misleading**

36.     Defendant's claim their Product, which contains 20 grams of added sugar, is "Slightly Sweet."

37.     "The terms 'sweet' and 'sweetened,' when used without additional qualification, are generally understood to refer to sugar."[10]

38.    Merriam and Webster's dictionary defines "slight[ly]" as "small of its kind or in amount[.]"[11]

39.    Accordingly, "slightly sweet" in its ordinary and common usage in the context of Defendant's Product means the Product only has a small amount of added sugar.

40.    Defendant's Product, however, contains 28% of the Daily Value (DV) "for added sugars per Reference Amount Customarily Consumed (RACC)."[12]

---

[10] *See* https://cspinet.org/sites/default/files/attachment/Low_Sugar_Letter-1.9.20.pdf (last visited July 17, 2020).

[11] *See* https://www.merriam-webster.com/dictionary/slightly (last visited Oct. 22, 2020).

[12] *See* https://cspinet.org/sites/default/files/attachment/Low_Sugar_Letter-1.9.20.pdf (last visited July 17, 2020).

41.    As mentioned above, Defendant's Product also provides more than half of the added sugar the American Heart Association recommends for daily consumption for men and eighty percent of the recommended daily amount for women.

42.    Defendant's "slightly sweet" beverage also contains about 5 teaspoons in added sugar.

### Defendant's Material Misrepresentations

43.    It is no secret that consumers pay a premium for perceived high quality, organic and low sugar products such as Teas' Tea.

44.    For example, a 12 pack of Teas' Tea costs as much as $21.99 whereas a 12 pack of tea from a competing brand costs as little as $3.79.[13]

45.    Plaintiffs only use the pricing in the previous paragraph as an example to plausibly plead that Defendant does indeed charge a large premium for its Product. The specific premium on a granular level will be determined later in the case by an expert.

46.    However, it is abundantly clear that Defendant uses the "slightly sweet" representation to extract a premium from consumers because it knows that is what consumers want and will pay extra for. *See* https://www.livemint.com/opinion/columns/opinion-consumer-

---

[13] *Compare Teas' Tea Organic Lightly Sweet Pomegranate Blueberry Green Tea 16.9 Ounce (Pack of 12),* AMAZON, https://www.amazon.com/Teas-Tea-Pomegranate-Artificial-Antioxidant/dp/B014KLVI4G (last visited Oct. 22, 2020), *with Arizona Green Tea with Ginseng and Honey - 12pk/11.5 fl oz Cans,* TARGET, https://www.target.com/p/arizona-green-tea-with-ginseng-and-honey-12pk-11-5-fl-oz-cans/-/A-14752521?ref=tgt_adv_XS000000&AFID=google_pla_df&fndsrc=tgtao&CPNG=PLA_Grocery%2BShopping_Local&adgroup=SC_Grocery&LID=700000001170770pgs&network=g&device=c&location=9021511&ds_rl=1246978&ds_rl=1248099&gclid=CjwKCAjw2dD7BRASEiwAWCtCb5NMZoOAJnQE4fVSQg1keH-Jx2HF77tf7Qg0HJNqgJYdYJmQ0DNz_xoCWp8QAvD_BwE&gclsrc=aw.ds. (last visited Sept. 30, 2020).

demand-helps-low-sugar-goods-take-off-1563988171270.html (last visited Jan. 27, 2021) ("Claims like 'low-sugar' . . . ha[ve] become important influencers at the point of purchase. There is also a gradual shift in terms of willingness to pay a premium for healthier alternatives[.]"); *see also* https://www.refrigeratedfrozenfood.com/articles/95858-study-quantifies-how-much-more-consumers-willing-to-pay-for-healthy-food (last visited Jan. 27, 2020) ("The desire to pay more for healthier foods is growing stronger. That's because up to 70% of consumers say they're willing to pay a premium for food products in the natural, ethical, enhanced or 'less of…' categories, according to '*Consumer Health Claims 3.0: The Next Generation of Mindful Food Consumption*,' a new survey from L.E.K. Consulting, Chicago.").

47.     Consumers who willingly pay a premium for products such as the one at issue here also expect that the product's advertising will conform to the ingredients and specific representations on the packaging.

48.     As a result, Defendant's misrepresentation regarding its Product being "slightly sweet", which appears prominently on the front of the label, is material to consumers who purchase Defendant's Product because such consumers believe the representation to be true. In other words, consumers believe they are purchasing a "slightly sweet" product which is low in sugar content and pass over other cheaper alternatives to make a purchase decision that better suits their health preferences and lifestyle.

49.     Defendant including the phrase "Slightly Sweet" on its Product is intended to appeal specifically to consumers that desire a healthy product that contains a minimal amount of sugar and induce these same consumers to purchase Defendant's Product.

50.     Defendant's Product's label prominently includes the "Slightly Sweet" language.

Images of an example of one Defendant's bottles is reproduced below:[14]

---

[14] As discussed above, the Product is available in a variety of flavors. However, all make the same "slightly sweet" representation and all contain the same amount of added sugar. *See supra* note 7.



51.    The representation that the tea is "Slightly Sweet" appears prominently, in large type, on the front of the bottle.

52.     Such a representation is material to consumers who desire to decrease their sugar consumption by purchasing a product low in sugar and one that it only "Slightly Sweet."

53.     Because the Product is not "Slightly Sweet" but instead is high in added sugars, Defendant's marketing, advertising and labeling is false and misleading.  Because of Defendant's deceptive advertising practices, consumers, including Plaintiffs, were and continue to be fraudulently induced to purchase the Product and have suffered damages.

## CLASS ACTION ALLEGATIONS

**Class Definitions**

54.     Plaintiffs bring this action on behalf of themselves and the members of the following class (the "Class"):

> All persons residing in the United States who, during the maximum period of time permitted by law, purchased Teas' Tea (of any flavor) primarily for personal, family or household purposes, and not for resale.

55.     Plaintiff Melissa Jimenez also brings this action on behalf of herself and the members of the following subclass:

> All persons residing in New York who, during the maximum period of time permitted by law, purchased Teas' Tea (of any flavor) primarily for personal, family or household purposes, and not for resale.

56.     Plaintiff Peggy Rodriguez also brings this action on behalf of herself and the members of the following subclass:

> All persons residing in Indiana who, during the maximum period of time permitted by law, purchased Teas' Tea (of any flavor) primarily for personal, family or household purposes, and not for resale.

57.     Plaintiff Erika Zeidler also brings this action on behalf of herself and the members of the following subclass:

> All persons residing in Virginia who, during the maximum period of time permitted by law, purchased Teas' Tea (of any flavor) primarily for personal, family or household purposes, and not for resale.

58.     Specifically excluded from this definition are: (1) Defendant, any entity in which any Defendant has a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (3) Class Counsel.

59.     Plaintiffs reserve the right to amend the Class definition as necessary.

60.     As used herein, "Class Members" shall mean and refer to the members of the Class, including Plaintiffs.

61.     Numerosity: Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable.  The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court.

62.     Typicality: The claims of the representative plaintiffs are typical in that Plaintiffs, like all Class Members, purchased Teas' Tea that was manufactured and distributed by Defendant. Plaintiffs, like all Class Members, have been damaged by Defendant's misconduct in that, *inter alia*, they have incurred damage due to purchasing a product at a premium price that contained sugar in a manner that Defendant represented was present in a much smaller degree. Furthermore, the factual basis of Defendant's misconduct is common to all Class Members and represents a common thread of fraudulent, deliberate, and negligent misconduct resulting in injury to all Class Members.

63.   <u>Commonality</u>: There are numerous questions of law and fact common to Plaintiffs and Class Members that predominate over any individual questions.   These common legal and factual issues include the following:

a)   whether Defendant's claim about the Product discussed above is true, misleading, or reasonably likely to deceive;

b)   whether the alleged conduct constitutes violations of the laws asserted herein;

c)   whether Defendant engaged in false or misleading advertising;

d)   whether Plaintiffs and the members of the Classes were damaged by Defendant's conduct;

e)   whether Plaintiffs and Class members are entitled to damages and equitable relief; and

f)   whether Plaintiffs and Class members are entitled to an award of punitive damages.

64.   <u>Adequate Representation</u>: Plaintiffs will fairly and adequately protect the interests of Class Members. Plaintiffs have retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiffs intend to prosecute this action vigorously.

65.   <u>Predominance and Superiority</u>: Plaintiffs and Class Members have all suffered harm and damages as a result of Defendant's unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.  Because of the relatively small size of Class Members' individual claims, it is likely that few Class Members could afford to seek legal redress for Defendant's misconduct. Absent a class action, Defendant's misconduct will continue without remedy.  Class treatment of common questions of law and fact would also

be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

## CAUSES OF ACTION
### COUNT ONE
### BREACH OF EXPRESS WARRANTY
**(On Behalf of The Nationwide Class)**

66.     Plaintiffs bring this count on behalf of themselves and the Class and repeat and re-allege all previous paragraphs, as if fully included herein.

67.     Defendant sold and Plaintiffs and Class Members purchased Teas Tea.

68.     Defendant represented in its marketing, advertising, and promotion of Teas' Tea that the product was "slightly sweet."

69.     Defendant made such representations to induce Plaintiffs and Class Members to purchase its Product.

70.     The representations that the Teas' Tea was "slightly sweet" was a part of the basis of the bargain between Defendant and Plaintiffs.

71.     Teas Tea did not conform to Defendant's representations and warranties because it contained a much higher amount of sugar than specifically represented.

72.     Within a reasonable time after Plaintiffs and other similarly situated consumers knew or should have known of such failure to conform, Plaintiffs' counsel sent a demand letter to Defendant on January 11, 2021. The demand letter outlined Defendant's misconduct, including that Defendant misrepresented the contents of Teas' Tea regarding its sugar content. Such conduct constitutes a breach of Defendant's express warranty.

73. As a direct and proximate result of Defendant's breaches of its express warranty and failure of Defendant's Product to conform to its representations as warranted, Plaintiff and Class Members have been damaged in that they did not receive the product as specifically warranted and/or purchased a product that they otherwise would not have purchased (or paid a premium for) if they knew it did not conform to Defendant's warranties.

## COUNT TWO
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (On Behalf of the Nationwide Class)

74. Plaintiffs bring this count on behalf of themselves and the Class and repeat and re-allege all previous paragraphs, as if fully included herein.

75. Defendant sold and Plaintiff and Class Members purchased Teas' Tea.

76. When sold by Defendant, Teas' Tea was not merchantable, did not pass without objection in the trade under the label description, was not of adequate quality within that description, was not fit for the ordinary purposes for which such goods are used, and did not conform to the promises or affirmations of fact made on its container or label.

77. Within a reasonable time after Plaintiff and other similarly situated consumers knew or should have known of such failure to conform, Plaintiff's counsel sent a demand letter to Defendant on January 11, 2021. The demand letter outlined Defendant's misconduct, including that Defendant misrepresented the contents of Teas' Tea regarding its sugar content. Such conduct constitutes a breach of Defendant's implied warranty.

78. Because the products contain a high amount of added sugar, they were neither "slightly sweet" nor in any way products with reduced sugar content.

79. As a direct result of the Teas' Tea being unfit for its intended purpose and/or otherwise not merchantable, Plaintiff and Class members were damaged because they would not

have purchased (or paid a premium for) Defendant's Product had they known the true facts regarding the level of sugar.

## COUNT THREE
## UNJUST ENRICHMENT[15]
### (On behalf of the Nationwide Class)

80.    Plaintiffs bring this count on behalf of themselves and the Class and repeat and re-allege all previous paragraphs, as if fully included herein.

81.    As the intended and expected result of its conscious wrongdoing, Defendant has profited and benefited from the purchase of its Product by Plaintiffs and the Class.

82.    Defendant has voluntarily accepted and retained these profits and benefits, with full knowledge and awareness that, as a result of its misconduct, Plaintiffs and the Class did not receive a product of the quality, nature, fitness, or value that had been represented by Defendant, and that reasonable consumers expected.

83.    Defendant has been unjustly enriched by its fraudulent and deceptive withholding of benefits to Plaintiffs and the Class at the expense of these parties.

84.    Equity and good conscience militate against permitting Defendant to retain these profits and benefits.

85.    As a direct and proximate result of Defendant's unjust enrichment, Plaintiffs and the Class suffered injury and seek an order directing Defendant's disgorgement and the return to Plaintiffs and the Class of the amount each Class Member improperly paid to Defendant.

---

[15] This cause of action is plead in the alternative to the breach of contract claims.

## COUNT FOUR

### VIOLATIONS OF INDIANA DECEPTIVE CONSUMER SALES ACT,
### Ind. Code §§ 24-5-0.5-1, et seq.
### (On behalf of the Indiana Class)

86.　The Indiana Plaintiff identified above, individually and on behalf of the Indiana Class, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

87.　Defendant is a "person" as defined by Ind. Code § 24-5-0.5-2(a)(2).

88.　Defendant is a "supplier" as defined by Ind. Code § 24-5-0.5-2(a)(3) because it regularly engages in or solicits "consumer transactions" within the meaning of Ind. Code § 24-5-0.5-2(a)(3)(A).

89.　Defendant engaged in unfair, abusive, and deceptive acts, omissions, and practices in connection with consumer transactions, in violation of Ind. Code § 24-5-0.5-3(a).

90.　Defendants' acts and practices were "unfair" because they caused or were likely to cause substantial injury to consumers which was not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition.

91.　The injury to consumers from Defendant's conduct was and is substantial because it was non-trivial and non-speculative; and involved a monetary injury. The injury to consumers was substantial not only because it inflicted harm on a significant and unprecedented number of consumers, but also because it inflicted a significant amount of harm on each consumer.

92.　Defendants' acts and practices were "abusive" for numerous reasons (a) because they materially interfered with consumers' ability to understand a term or condition in a consumer transaction, interfering with consumers' decision-making; (b) because they took unreasonable advantage of consumers' lack of understanding about the material risks, costs, or conditions of a consumer transaction; consumers lacked an understanding of the material risks and costs of a

variety of their transactions; (c) because they took unreasonable advantage of consumers' inability to protect their own interests; consumers could not protect their interests due to the asymmetry in information between them and Defendant; (d) because Defendant took unreasonable advantage of consumers' reasonable reliance that they were providing truthful and accurate information.

93.    Defendant also engaged in "deceptive" acts and practices in violation of Ind. Code § 24-5-0.5-3(a) and § 24-5-0.5-3(b) by (a) misrepresenting that the subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have and (b) misrepresenting that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not.

94.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

95.    Defendants received notice pursuant to Ind. Code § 24-5-0.5-5(a) concerning their wrongful conduct as alleged herein by Indiana Plaintiff and Class members. Defendants' conduct includes incurable deceptive acts that Defendants engaged in as part of a scheme, artifice, or device with intent to defraud or mislead, under Ind. Code § 24-5-0.5-2(a)(8).

96.    As a direct and proximate result of Defendants' uncured or incurable unfair, abusive, and deceptive acts or practices, the Indiana Plaintiffs and Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Teas' Tea.

97.     Defendants' violations present a continuing risk to Plaintiff and Indiana Class members as well as to the general public.

98.     The Indiana Plaintiffs and Class members seek all monetary and non-monetary relief allowed by law, including the greater of actual damages or $500 for each non-willful violation; the greater of treble damages or $1,000 for each willful violation; restitution; reasonable attorneys' fees and costs; injunctive relief; and punitive damages.

## COUNT FIVE
## VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW
### N.Y. Gen. Bus. Law §§ 349, *et seq.*
### (On behalf of the New York Class)

99.     The New York Plaintiff identified above, individually and on behalf of the New York Class, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

100.    Defendant engaged in deceptive acts or practices in the conduct of its business, trade, and commerce or furnishing of services, in violation of N.Y. Gen. Bus. Law § 349, as described herein.

101.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

102.    Defendants acted intentionally, knowingly, and maliciously to violate New York's General Business Law, and recklessly disregarded the New York Plaintiffs and New York Class members' rights.

103.    As a direct and proximate result of Defendant's deceptive acts and practices, New York Plaintiff and Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Teas' Tea.

104.    Defendant's deceptive and unlawful acts and practices complained of herein affected the public interest and consumers at large, including the thousands of New Yorkers who purchased and/or used Teas' Tea.

105.    The above deceptive and unlawful practices and acts by Defendant caused substantial injury to the New York Plaintiff and Class members that they could not reasonably avoid.

106.    New York Plaintiffs and Class members seek all monetary and non-monetary relief allowed by law, including actual damages or statutory damages of $50 (whichever is greater), treble damages, injunctive relief, and attorney's fees and costs.

**COUNT SIX**
**FALSE ADVERTISING**
**N.Y. Gen. Bus. Law § 350**
**(On behalf of the New York Class)**

107.    The New York Plaintiff identified above, individually and on behalf of the New York Class, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

108.    Based on the foregoing, Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way and which constitutes false advertising in violation of Section 350 of the New York General Business Law.

109.    Defendant's false, misleading, and deceptive statements and representations of fact include but are not limited to the representation that Teas' Tea was "slightly sweet." Defendant also directed this representation to consumers.

110.    Defendant's false, misleading, and deceptive statement and representation of fact—that Teas' Tea was "slightly sweet"—was and is likely to mislead a reasonable consumer acting reasonably under the circumstances.

111.    Defendant's false, misleading, and deceptive statement and representation of fact—that Teas' Tea was "slightly sweet"—has resulted in consumer injury or harm to the public interest.

112.    The New York Plaintiffs and members of the New York Subclass have been injured because: (a) they would not have purchased Teas' Tea had they known that the product contained much more sugar than represented; (b) they paid a price premium for Teas' Tea based on Defendant's false and misleading statement; and (c) Teas' Tea did not have the characteristics and benefits promised because it contained a high level of added sugar. As a result, the New York Plaintiffs and the New York Subclass have been damaged in an amount to be proven at trial, but not less than either the full purchase price of Teas' Tea, or the difference in value between Teas' Tea as advertised and the Teas' Tea as actually sold.

113.    As a result of Defendant's false, misleading, and deceptive statement and representation of fact (i.e., that Teas' Tea was "slightly sweet") the New York Plaintiff and members of the New York Subclass have suffered and continue to suffer economic injury.

114.    The New York Plaintiff and members of the New York Subclass suffered an ascertainable loss caused by Defendant's misrepresentation because they paid more for Teas' Tea than they would have had they known the truth about the product.

115.    On behalf of themselves and other members of the New York Subclass, the New York Plaintiffs seek to enjoin Defendant's unlawful acts and practices described herein, to recover all damages permitted by statute and reasonable attorneys' fees.

## COUNT SEVEN
## VIOLATIONS OF VIRGINIA CONSUMER PROTECTION ACT,
### Va. Code Ann. §§ 59.1-196, et seq.
### (On behalf of the Virginia Class)

116.    The Virginia Plaintiff identified above, individually and on behalf of the Virginia Class, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

117.    The Virginia Consumer Protection Act prohibits "[u]sing any . . . deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction." Va. Code Ann. § 59.1-200(14).

118.    Defendant is a "person" as defined by Va. Code Ann. § 59.1-198.

119.    Defendant is a "supplier," as defined by Va. Code Ann. § 59.1-198.

120.    Defendant engaged in the complained-of conduct in connection with "consumer transactions" with regard to "goods" and "services," as defined by Va. Code Ann. § 59.1-198. Defendants advertised, offered, or sold goods or services used primarily for personal, family or household purposes.

121.    Defendants engaged in deceptive acts and practices by using deception, fraud, false pretense, false promise, and misrepresentation in connection with consumer transactions, described herein.

122.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

123.    The above-described deceptive acts and practices also violated the following provisions of Va. Code Ann. § 59.1-200(A): misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits; misrepresenting that goods or services are

of a particular standard, quality, grade, style, or model; and advertising goods or services with intent not to sell them as advertised, or with intent not to sell them upon the terms advertised.

124.    As a direct and proximate result of Defendants' deceptive acts and practices, the Virginia Plaintiff and Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Teas' Tea.

125.    Defendant's violations present a continuing risk to Virginia Plaintiff and Class members as well as to the general public.

126.    The Virginia Plaintiff and Class members seek all monetary and non-monetary relief allowed by law, including actual damages; statutory damages in the amount of $1,000 per violation if the conduct is found to be willful or, in the alternative, $500 per violation, restitution, injunctive relief, punitive damages, and attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek a judgment against Defendant, as follows:

a.  For an order certifying the Class and Subclasses under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Subclasses and Plaintiffs' attorneys as Class Counsel;

b.  For an order declaring that Defendant's conduct violated the statutes referenced herein;

c.  For an order finding in favor of Plaintiffs, Class, and Subclasses on all counts asserted herein;

d.  For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e.  For prejudgment interest on all amounts awarded;

f.  For an order of equitable monetary relief;

g.  For injunctive relief as pleaded or as the Court may deem proper; and

h.  For an order awarding Plaintiffs, the Class, and Subclasses their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury on all claims so triable.

Dated: February 19, 2021

Respectfully submitted,

*/s/ Todd S. Garber*

Todd S. Garber
Bradley Silverman
**FINKELSTEIN, BLANKINSHIP**
**FREI-PEARSON & GARBER, LLP**
One North Broadway, Suite 900
White Plains, New York, 10601
914-298-3283
tgarber@fbfglaw.com

Charles E. Schaffer*
David C. Magagna Jr.*
**LEVIN, SEDRAN & BERMAN, LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
cschaffer@lfsblaw.com
dmagagna@lfsblaw.com

Gary E. Mason *
**MASON LIETZ & KLINGER LLP**

5101 Wisconsin Avenue NW, Suite 305
Washington, DC 20016
gmason@masonllp.com

Gary  Klinger*
**MASON LIETZ & KLINGER LLP**
227 W. Monroe Street, Suite 2100
Chicago, IL 60630
gklinger@masonllp.com

Jeffrey S. Goldenberg*
**GOLDENBERG SCHNEIDER L.P.A.**
4445 Lake Forest Drive, Suite 490
Cincinnati, OH 45242
jgoldenberg@gs-legal.com


*Attorneys for Plaintiffs*
*\*Applications for pro hac vice to follow*